On the court's docket, please. Your Honor, this case on the docket, suit number 16-0562, the people of the state of Illinois, present at the hearing the Daniel Acevedo, defendant-defendant. Arguing on behalf of the defendant-defendant, he is April E. Cantale. Arguing on behalf of the defendant-defendant, I believe, Mr. Ivan Oliver Gallo III. Thank you, Mr. Marshall. Ms. Cantale, you may proceed. Great. Thank you. You may proceed. Good morning, Your Honors. Counsel, and may it please the Court, my name is April Cantale, and I represent defendant appellate Daniel Acevedo on behalf of the Office of the State Appellate Defender. There are three issues presented in this appeal, but as the second and third issues deal with purely pecuniary matters, I will focus on the first and primary issue in this case, except in response to this Court's questions. The primary issue here is whether this cause should be remanded for a new trial, because trial counsel labored under a per se conflict of interest, and Mr. Acevedo did not knowingly waive his right to be represented by conflict free counsel. I'm taking the position that there was something deficient in the trial court's admonishments. Yes, Your Honor. That's the crux of the issue. Okay. So can you point out to us where the deficiency lied? Yes, Your Honor. So the record in this case gives no indication that Mr. Acevedo was informed and actually understood that his counsel's simultaneous representation of a key prosecution witness in this case compromised his duty of loyalty by dividing it between paying clients whose interests were generally inverse. What happened here with the trial court's admonishments to Mr. Acevedo was that they did not convey the significance of the conflict that trial counsel labored under. They conveyed to Mr. Acevedo only that, first, according to the State, a per se conflict of interest existed because of the concurrent representation of Mr. Acevedo and Lorena Montes, a State's witness. Now, the State represented, again, a two-part question, what they were going to do with the witness, how they intended to call her, what her proposed testimony was, correct? Did they bring that out to the attention of the trial judge and open court with the defendant present? They did let the trial court know that they expected her to testify to numerous material facts, including several facts which the State needed to prove its case. They also said she's not going to testify as we expected, correct? The State anticipated that she might be a difficult witness, I believe. She could be an adverse witness, essentially. I don't know that the State actually believed she was going to be an adverse witness. They at no point indicated to the court that they wanted to treat her as a hostile witness or expected her to recant anything she had previously said. Rather, they said that they needed her testimony to provide a crucial link between Mr. Acevedo, Ms. Montes' car, which was the car in which the shotgun was seen, and also to corroborate the trooper's testimony. Additionally, Ms. Montes' testimony provided a link between Mr. Acevedo and the location where her car was discovered later the evening of the incident. So although the State didn't seem to be particularly confident about what exactly Ms. Montes would testify to, they recognized that she was going to be crucial to their case and therefore give testimony that would be harmful to Mr. Acevedo. Some of this was volunteered by the defense counsel. Let me ask you this. Can we take into consideration what was brought to the attention of the court and the defendant in open court even though it was by the State? Yes, Your Honor. You can absolutely take that into account. However, it's Mr. Acevedo's position that what was brought to the court's attention and then what was discussed with him was insufficient to apprise him of the significance of the conflict. The significance of the conflict includes the ways in which the conflict could adversely affect his representation. How? The how was missing here. The trial court informed Mr. Acevedo only that there were, quote, issues that may or may not come up during the course of the representation that could affect him. You said in your brief, your opening brief, that defense counsel did not recognize the conflict. There is some question as to whether he... Was that an accurate statement? I believe so, Your Honor. There is some question as to whether he recognized that this was, in fact, a per se conflict of interest. Did counsel say to the court, we did cover the conflict, the ramifications of that, and what we expect to happen if Lauren Lurina is called as a witness and how it affects him and his rights? Yes. So he did say to the court, Judge, I did discuss the conflict with the defendant and also the potential ramifications of that, correct? He did say that, yes, Your Honor. However, he did not say exactly what he believed the conflict to be. The fact that he was concerned about whether the facts of Ms. Montez's case and Mr. Acevedo's cases were germane to one another suggests that he thought that perhaps there was a potential conflict. It doesn't indicate he necessarily recognized there was a per se conflict, that his loyalties were necessarily divided by two clients by virtue of their concurrent representation. The trial court told the defendant there was a per se conflict and that he would appoint counsel if the defendant wished, and the trial would be continued, correct? Correct, Your Honor. He told the defendant that according to the state, a per se conflict existed, and he did offer to continue the case on the defense motion if Mr. Acevedo believed that there was anything about the conflict that would adversely affect him. However, at that point, Mr. Acevedo had not been informed of how the conflict could adversely affect his case. So the rules of professional responsibility actually provide some good guidance on how a trial court might actually inform a defendant in Mr. Acevedo's position of the significance of a conflict in order to secure a knowing waiver. In those kinds of situations where an attorney has concurrent clients and therefore has a conflict of interest by virtue of those concurrent representations, the rules say that the attorney should obtain their client's informed consent. That requires that each affected client be made aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. Isn't there a strong presumption that defense counsel followed the rules? Your Honor, no, I don't believe so, because counsel was conflicted. As the court pointed out in Stovall, the difficulty in appropriately advising an accused of his right involving a conflict of interest almost directs that counsel be free from any such conflict. The existence of the conflict may have very well impaired the advice that counsel was able to give to Mr. Acevedo, especially if he did not fully recognize how his representation of Ms. Montez could adversely affect Mr. Acevedo. If he believed that whether the cases were germane to one another was central to determining the reasonably foreseeable ways in which Mr. Acevedo's representation could be adversely affected by the dual representation of Ms. Montez, then he may not have given good advice. Let me finish my talk. Go ahead. Yes, Your Honor. The defense counsel represented the court in the defendant's presence that he had discussed these various issues, that the defendant understood the nature of the per se, and that he understood the different issues that might arise. We're talking about that was not discussed by the court, and then the defendant was given the opportunity to weigh in on that. Your Honor, the problem with the confirmation that the trial court saw from the defendant was that it assumed that he knew what those, quote, issues were, or the various ways in which or scenarios in which his representation by Mr. Nikitas could be adversely affected by the dual representation of the prosecution witness. How does the trial court know the various scenarios? Does he have a crystal ball, or what should he do? He does not have a crystal ball, Your Honor. But again, getting back to the guidance provided by the rules of professional conduct, the court can advise any defendant in this situation of material and reasonably foreseeable ways that the conflict could have adverse effects on that person's interests. Those sort of admonitions would include informing the defendant that his attorney is laboring under a conflict of interest because of the concurrent representation that necessarily divides his loyalties between two paying clients, that as a result of the concurrent representation, counsel owes a duty of loyalty to both clients, which prevents him from putting one client's interests over another, and that his divided loyalties might prevent him from providing effective representation in subtle, undetectable ways, as well as certain reasonably foreseeable ways, including limiting his ability to cross-examine his other client. For example, in this case, Mr. Nikitas asked Ms. Montes only two questions on cross-examination, neither of which challenged her credibility or probed her motives for testifying against Mr. Acevedo or any bias she might have, including whether she had any expectations of leniency or desired to curry favor with the prosecution because she had her own pending criminal case. That never came out. On its face, her testimony, if the jury believed it, would have been helpful to the defendant, correct?  Why is that? Because Ms. Montes' testimony did a few things that were extremely harmful to the defendant. First, she provided a crucial link between her car, the defendant, and the gun that was seen in the backseat. She carefully crafted her testimony to exculpate herself while leaving open the possibility not only that Mr. Acevedo was responsible for possessing the gun that was in her car, but also that implicating him in potentially another crime, which was the apparent theft of her car. Additionally, Mr. Nikitas' duty of loyalty to Ms. Montes prevented him, necessarily, from pursuing any defense strategy or case theory which would have challenged her assertions that she was not in control of her car at the time of the offense and that she was utterly ignorant of what was in her car, including that shotgun. So her testimony was not helpful to Mr. Acevedo, and it was actually harmful. She denied belonging the car to him. She said that she had no idea what happened to her car after she parked it at this party in Chicago, that it just went missing, and that she made calls not to the Chicago Police Department, not to the Lakeville Police Department, which was where she lived. She called the Round Lake Police Department, which is where the defendant lived, and she called the defendant to ask about the whereabouts of her car. So she was implying throughout her testimony that he had some knowledge of what was going on with her car beyond her own and that she was utterly innocent of anything that could have been in the car. Laying the blame solely at his feet. Now, you cited the Poole case in favor, in support of your position. But isn't that distinguishable on the basis that in Poole, the waiver and the admonition discussions took place after the conviction, before, after the trial, correct? They did in that case, Your Honor. Isn't that totally different than discussing it before the trial? No, Your Honor. The waiver in Poole is actually secured before the trial. It was a written waiver. The point was that the defendant was not informed of the nature and significance of the conflict. In Olinger, the Supreme Court said that the trial court has to discuss the general nature of the conflict, but that does not mean the trial court must painstakingly detail every potential ramification. In your presentation here, it's fairly detailed. The trial court knew, and based upon what the state represented, it was clear that if this witness was going to be providing testimony that may harm the defendant, correct? Yes, Your Honor. And the defendant was told, it's a per se conflict, I will appoint new counsel for you, and acknowledged that he went over various details with his attorney about the conflict, correct? Your Honor, he did agree that he discussed those issues which may or may not come up in the course of the representation. The point here is that there is no indication that he was informed of the reasonably foreseeable ways that his representation could be adversely affected. There was not enough in this record to determine that he knew the significance of the conflict so as to give any meaningful assent to the continued representation. And if counsel had been appointed and Ms. Montes denied being in the car, defense counsel for the defendant, independent counsel, could have argued that the police impeached her under denials, show consciousness of guilt, and she probably owned the shotgun because it was behind the baby seat, right? Absolutely. They absolutely could have pursued that strategy. Is that an obvious argument? It's obvious on its face that that would be a potential. Well, it's obvious that would be a potential argument, Your Honor, but Mr. Nikitas was prevented from pursuing that particular line of inquiry or pursuing that strategy. Well, he made the decision knowing that there was a per se conflict and the trial court was willing to appoint counsel to present these obvious arguments and he said, no, I want to stay with this counsel. Whereas it may have been obvious to Mr. Nikitas, it may not have been obvious to Mr. Acevedo what an appropriate defense strategy would have been in this case or that that was an option. The point here is that Mr. Acevedo was not informed of the significance of the conflict, the ways in which it could affect his case. Can I stop you there and ask you this? You know, you present an interesting argument that has some intuitive appeal, but here's my question. How do we announce a rule when we talk about this is different than a lot of different statutory, Supreme Court rule admonitions. This is what you do one through five. How do we announce a rule that says you have to cover various scenarios? What scenarios? What's the extent of the scenarios? What is the rule we would announce in this case? How far do we go? Can we outline every conceivable scenario that a trial judge should outline? Is that what you're expecting? No, Your Honor, not at all. And, in fact, the admonitions that I suggest would be appropriate in this type of situation need not be fact-specific or case-specific at all. They need to be conflict-specific. I think that Stovall and Lawson already set forth the rule, which is the defendant must be informed and demonstrate an actual understanding of the nature and significance of the conflict. What does it mean to convey the significance of a conflict to a defendant? To explain the reasonably foreseeable ways it might affect his representation, including, in this context, limiting counsel's ability to cross-examine his other client, the prosecution witness, preventing him from pursuing a case theory or strategy which may implicate his other client in a crime or otherwise negatively affect that client's interests, compromising his ability to counsel the defendant on whether to testify and prepare him to do so, particularly if the defendant's testimony could be harmful to his other client's interests. It could also impair effective performance of certain tasks. Your Honors, if I may briefly conclude. Of course. The crippling effect of the conflict in this case is manifest, and the vague admonitions that Mr. Acevedo received in the midst of his trial were insufficient to secure a knowing waiver. Therefore, Mr. Acevedo asks that this Court remand this cause for a new trial with conflict-free counsel and vacate $450 in erroneously assessed fines and fees. I have a final question. Thank you. The defense counsel represented that you went over, indicated the various ways it would affect the defendant's rights, those things that you were talking about. We don't know what that was specifically, but he says that. Then the defendant acknowledges that his attorney went over him and he understood how his rights would be affected with this conflict. What are we to do to that? Do we just overlook the defendant's acknowledgment? Your Honor, it's far too vague and oblique. The counsel said, I discussed the issues and the ramifications without the court knowing what those things were, what exactly he told the defendant. That's not sufficient to show that the defendant actually understands the significance of the conflict, Your Honor. Even if it's just the general significance and not the specific issues that could come up? The how, yes, Your Honor. Because, I mean, if you look at Olinger, there was really just one thing that came up, and that is that this alleged issue with the attorney could lead to a criminal prosecution of the attorney. It was the only thing the court said. And the reviewing court said in the Supreme Court that that was enough, that was fine. Importantly, Your Honor, Olinger involved a potential conflict, not a per se conflict. Because of the – Don't you think the rules are the same, though? I mean, if we're talking about admonishing of the significance, the nature of significance, I mean, are you saying that in Olinger, because it wasn't a per se conflict, we have to have more than the general significance? Do you want us to announce that rule of law? I'm sorry. Okay, do you want us to announce a rule of law that if there is a potential conflict, you only have to go over general significance, but if it is a per se conflict, you have to go through this laundry list that you went through earlier? Your Honor, I don't make any argument whatsoever about what should happen in the case of a potential conflict because that's not an issue here. But I think Stovall makes clear that because per se conflicts of interest are so serious and have such a fundamental effect on a defendant's fundamental right to effective assistance of counsel, that there needs to be more action by the court to ensure that the defendant actually understands  Do we look at the nature of the evidence when we decide whether or not the defendant, I mean, here it's pretty simple and straightforward. Everybody knew that according to the state's theory, Montez was a passenger in the vehicle, the defendant was the driver, according to the state's theory, correct? Yes, Your Honor. And on the stand, she denied being the driver. She denied being involved at all. Your Honor, she denied being in the car to her knowledge. However, she left open the possibility that she may have been blacked out as a passenger in the car. When asked whether it was possible that she was in the car and she just didn't remember, she said, I don't know. So, Your Honor, I think that the facts of the case, while the trial court certainly could, if they had more information about the case, get into more specific issues if they wanted to, I think that what this court should require of the trial court is that they make conflict-specific admonitions regarding a conflicted lawyer's ability to cross-examine, to pursue a case theory that could harm the interests of their other client, their ability to counsel the defendant on whether to testify and how to testify, that all of those things could specifically be affected by a per se conflict of interest like the one that existed here. And those are general admonitions that require no fact-specific inquiry into a defendant's case. Thank you. Thank you very much. Thank you, Your Honor. Mr. Taylor, you may proceed. Your Honors, counsel, may it please the Court, it is the people's position that the trial court adequately provided admonitions to the defendant as to the per se conflict of interest. Defendants believe that he was inadequately informed about the ramifications and possible consequences of the conflict is incorrect. By a defense-only admission to the trial court, he admitted that when the defense counsel informed him that there was a conflict of interest because the witness going to testify against him was also a client of the defense counsel, the defense counsel explained in open court how he, to defend Acevedo, that any about the potential issue that could arise, ramifications of those. You agree that the trial court's job, not the attorney's job, but the trial court's job is to admonish on a general significance. Yes. The case law says that. Yes. At least a general significance, maybe more than a per se conflict, I don't know, but at least a general significance. Yes. Can a trial court rely on an attorney? Can a trial court say, Mr. Defendant, it's my job to admonish you about the significance of this conflict that we have here, but I'm going to rely on your attorney to advise you of that. Go talk to your attorney about it. And then when they come back, say, did you talk to your attorney about it? Yes. And do you want to stay with your attorney? Is that enough? In that situation, that could be enough right there. Really? Okay. So the trial judge can rely. When the trial judge's job, as we just said, is to admonish on general significance, the trial judge can rely on the attorney doing a good job doing it, even though the trial judge. Now, if the trial judge had said, what did you talk about, that's a different story. But if the trial judge just says, go talk to your attorney, come on back in a few minutes, and then when the trial judge, when they reconvene, he or she says, did you talk to your attorney? Yes. Without going into what was said, are you satisfied with your attorney? Do you want to keep your attorney? That's enough. In that sort of situation, we probably want the trial judge to go slightly more in depth to what was stated. But in this case, yes, it was laid out that the defense counsel did speak about the ramifications about what happened. But in this case, the court gave the defendant the opportunity to discuss specifically what ramifications went over. And since the defendant didn't wish to further discuss what specific ramifications that were discussed, I'm sorry, I lost my train of thought for a second there. Well, it's not really up to the defendant to bring up the issues. I mean, the trial judge, again, can the trial judge rely now on the defendant saying, I mean, if the judge says, do you have any questions about this, and the defendant says no, I'm defiant of it, can the trial judge rely on the defendant's presumed knowledge of what's going on? The state laid out the general nature, correct? Yes, the state laid out the general nature of the first aid conflict. The defense counsel agreed that there was a first aid conflict because the witness was going to testify, and that witness was another client of the defense counsel. So the general nature of aid was known to the defendant and known to the court. But no one ever explained to the defendant that if Ms. Montez denies being in the car, she could have been impeached by the police officers and that her denial showed consciousness of guilt, that the shotgun was hidden behind the baby seat. It's very possible that the defendant didn't even know about the shotgun. Maybe he fled from the police for some other reason. That would have provided a reasonable doubt in the minds of a juror if they believed that, correct? If the juror believed that. But that goes towards... But that was never laid out for the defendant, that scenario. The trial court did not lay that specifically out towards the defendant, no, that particular scenario. But that scenario is from the trial strategy of the defense counsel in trying to deal with the fact that he's the defense counsel for both. Well, yes, exactly. That's the point that Justice Burke raised, that his divided loyalty prevented him from cross-examining her and attacking her credibility and saying she's the one who knew about the shotgun. It was behind her baby seat. I think that's the... Well, at this point in time, we're presuming that the reason that he didn't attack her like that was due to the viability other than just general trial strategy and just allowing the jury to see how the witness reacted to just general questions and make of it what they will from her statements alone. But isn't that, what you just said, isn't that for the trial court to explain to the defendant? And that's why you should consider independent counsel, because of the nature of this per se conflict. The thing is, the trial court won't be able to indicate specifically what could happen in the future. The trial court could only know that... The trial court wouldn't know per se was based upon the fact that the state witness is also a client defense counsel as well as the defendant. But the trial court can't, as you said, can't open crystal balls in the future as to what could potentially happen. The other alternative is also that the defendant knew full well what she was going to testify to and didn't really care about the cross-examination because he was taking one for the team. He was going to go down because this is her girlfriend and the mother of his child, correct? Yes, that's potentially correct. Judge, I have to ask you about that one comment you made. We can't look at this case in hindsight, but what happens during the trial, there has to be a rule as to when and to what extent the trial court demolishes the defendant on the waiver before the trial. Yes. What happens after the trial begins can't be used to determine whether or not the case should be remanded, can it? No, it has to look at the waiver, when it occurred, it was supposed to occur before trial. That's why people think Poole is an opposite to this case because in that case, while a waiver was written before trial, the trial court had no clue that there was any form of conflict until after the conviction had occurred. But is, I mean, Poole is definitely factually distinguishable, as you point out, because it happened after the trial. The trial court had no opportunity to acknowledge. But an arguable similarity is that in Poole, the trial judge in the post-trial colloquy relied on the defense attorney's acknowledgement of the defendant before trial to explain the conflict to his client, correct? That's correct. I mean, isn't that the same thing that the defense counsel is arguing here now, that the trial judge in this case also simply relied on the defense counsel's job in admonishing, doing a good job in admonishing his client? It's not just simply relying upon what the defense counsel stated. The trial court did take good faith in that the defense counsel took the time to explain what the ratifications would be because the defense counsel is in the best position to understand fully what ratifications would occur from his observation of the defendant and his witness. So the judge did rely upon the defense counsel for that, but the judge did speak to the defendant about what the per se itself was, allow the defendant to speak to the judge about specifically what the ratifications were, and inform him that he did not have to continue on with this attorney, that he can get a new attorney for him to use for his upcoming trial. You know, what the defense attorney said on the record to the trial court probably reflects what he told his client. Would you agree? There might be more detail he told his client, but it doesn't reflect it, yes. He's not going to say something to the trial court that he didn't tell his client, right? Correct. And according to his representations to the court, he told the court that he did not believe there was an issue in his contemporaneous representation of the defendant and Ms. Montes, correct? Yes, I believe that was in reference to what the defendant was being charged with and what the state witness was being charged with, that the crimes were not related to each other. Well, yeah, he didn't believe there was any issue, but of course there's an issue. When he can't cross-examine her and point the finger at her, correct? I think when he said there wasn't any issue, I believe he was referring to there was no issue for the court to allow a waiver based upon whether or not this particular conflict was based upon the same type of crime being charged. Didn't he say her testimony was not, quote, germane, unquote, to what the defendant was being charged with? Yes, he said that. Maybe her charges were not germane or something. He said her charges were not germane to what Alcibado was being charged with. Do you agree with that? I do not recall what her charges are. She was charged with obstructing. I believe obstructing. Something. For getting rid of the gun. Mr. Taylor, what is your strongest case you can cite to us here on this issue of whether or not the admonishments were sufficient? Is there any case that you have unearthed that stands on all fours with this scenario? Unfortunately, I cannot think of any particular case that is precisely like this outside of Olinger. Well, what about, let's talk about Olinger. It may turn, our decision may turn on how we construe the Olinger decision. So why would Olinger control the game? Well, in Olinger, it indicates that the trial court does not have to be explicit as to what the ramifications would be for a conflicted attorney. It just needs to inform the defendant that there will be ramifications from this. And since it's a per se based upon states, since the per se conflict is based because of a state witness being the client of the defense counsel, the implication is that, the implication being that defense counsel may not treat that state witness the same as any other state witness. Do you agree with, do you agree with opposing counsel that Olinger involved a potential versus a per se conflict? I thought Olinger dealt with a per se conflict, but I cannot recall those precise details. Let's assume for a minute it was a potential conflict. Do you see a difference in the rule of law that should come out of this case? This is clearly a per se. I mean, you can see this is a per se. Yeah, it's definitely per se in this case. Again, assume Olinger is a potential conflict. Should a rule of law differ from this case as opposed to the general significance that we talked about in Olinger? I don't see why there should be. If a trial court is admonishing a defendant either for a per se or potential conflict, the trial court still needs to admonish it to the same. There shouldn't be any difference in the law. Let me ask you this. You can make an argument at the first. To me, Olinger almost has a two-part test. It says the defendant must be acknowledged or admonished as to the existence of the conflict. I think here, obviously, he was aware of the conflict. Everybody talked about it. He knew that his attorney was representing him and a witness contemporaneously. But here's the other part. The court goes on to say, aware of the existence and its significance. That seems to be the rub in this case, the significance. He seems to be saying, yeah, he knew there was the defense attorney was representing the defendant and the witness at the same time. Did anybody say the magic words like the loyalties of the attorney may be divided and explain that? The significance is what the hang-up is here. What does the court mean by that? Is it enough to make the defendant aware that there's a conflict? Or do you need to flesh out briefly what the significance is? For significance. There's a difference, isn't there? There's an and, not or, of the significance. Yeah. And its significance. So what does that mean? Well, the defendant is currently on trial for multiple felonies. There is the implication that the significance is the fact that he could still end up being convicted with this attorney despite this conflict ongoing. Doesn't it mean the significance of the conflict between the attorney and the witnesses? I mean, I think the defendant knows he could end up being convicted. But what does that give rise to? You've got an attorney that is representing two people at the same time. What does that mean? There could be loyalties. It could be dividing. It could be compromise. Isn't there like a missing link here? Where was that significance discussed in this case? In this case, from the colloquy that Troncord gave to me. Right. That's the critical inquiry right there. And that included the state's representations of what the evidence would be, correct? That's correct. That was all in the same discussion. So it's not as if the trial court had to pare it back to the defendant with the state just laid out. The state told the court the witness was a passenger in the vehicle and also that they intended to call her for several different reasons, but that she's not going to testify the way they believe she would testify. The state said we believe the evidence is otherwise, other than what she was going to testify, correct? Correct. So when the trial court's asking those questions of the defendant, that's the backdrop of it, isn't it? That's correct. Right. And in this case, this case is most likely on the line of as much as. But as you said, looking at the backdrop, looking at what the defense counsel said, that you're supposed to describe about the ramifications, about the state's attorney's indications, about what the statements will say, and coming down with the statements made by the trial court to the defendant about that this person exists and that there are ramifications from it, and giving the opportunity to question more about what they could be, in the case of people, that this is a sufficient admonishment and that the waiver was properly accepted by the trial court. Thank you, Mr. Taylor. Ms. Contelli, you may address the court on rebuttal. Thank you, Your Honors. I'd like to start by discussing Olinger further. So in that case, again, there was a potential conflict of interest involved, not a per se conflict. I don't think it turns on that. I'm getting hung up on the language of significance. Doesn't it sound like there's a two-part test? Yes, Your Honor. And I believe that Lawson, decided after Olinger, makes clear that that is, in fact, the test. The question is, what does that mean to inform the defendant and ensure his understanding of the significance of the conflict? In Olinger, defense counsel faced potential prosecution for tampering with a prosecution witness in the defendant's case. The defendant was apprised of the potential conflict that resulted from his attorney's alleged conduct. He was provided with transcripts of a tape-recorded conversation between his counsel and the prosecution witness, and he was admonished that the alleged misconduct could lead to criminal prosecution of his counsel. The only thing he wasn't informed of is that there could be disciplinary action by the ARDC, which the court found was not relevant to whether he was adequately informed of the nature and significance of the conflict. Clearly, the defendant in that case had far more information than the defendant had here. Let me ask you this. As I just asked Mr. Taylor, the trial court was listening to the State's representation, correct, regarding Ms. Montes, what her role in this case, what her testimony was going to be, what they expected, but she was not going to testify as expected, correct? Yes, Your Honor. And then the trial court, when he addressed the defendant, he made very clear to the defendant, this is a very serious, this is very serious, correct? Yes. So I want to make sure you're completely following what's happening here, correct? Yes, Your Honor, he said all of those things. However, the trial court did not explain why it was serious or how the defendant's representation could be adversely affected by the situation. Well, the State said that there's a first-state conflict here and explained why, and the trial court, despite what defense counsel said, offered new counsel and said, this is very serious, I want to make sure you are completely following what's happening here. The trial court, yes, Your Honor, said that. However, he did not explain sufficiently to allow the defendant to fully follow what was happening. Talking about per se conflicts of interest and what the State's witness might testify to, none of those things are sufficient to apprise a lay defendant of how his representation could be adversely affected by the conflict. Sobel and Lawson made clear that the purpose of informing a defendant of the significance of the conflict is so that he might understand how it could affect, even subtly, his representation. And how does the trial judge know that without relying upon the representations of counsel? How does the trial court know the potential ramifications? Should trial counsel, should the judge say, okay, time out, what's the potential testimony to the State? No, Your Honor. And then say to the defense? I mean, the trial court could if it wished. However, I don't think that asking either of the parties to reveal their case strategy before trial is necessary to appropriately admonish the defendant. The divided loyalties of trial counsel. So, in common sense language, what does the trial judge have to say? Explaining, again, that we could defend. Without the legalese to your client, what does the trial judge have to say? That counsel's divided loyalties could affect his ability to effectively cross-examine his other client to pursue case strategies or defense theories that might adversely affect his other client's interest, such as implicating that other client in a crime or anything that would negatively affect the interest. Counseling defendant on whether to testify and preparing him to do so, particularly if his testimony might harm the defense counsel's other client. Those types of things are reasonably foreseeable ways that any defendant facing this type of per se conflict could be negatively affected by the dual representation. So, those types of things are apparent to a trial court in any situation where a defendant faces this kind of conflict. And if the trial court has more information and they want to get further into the specifics of the case as an injured, they certainly could. But that is not necessary to appropriately apprise the defendant of the significance. Very simply, what does the trial judge have to explain to this defendant so he understands it in common sense English? The trial court needs to explain how the conflict could adversely affect his representation, meaning the reasonably foreseeable ways that the conflict could negatively affect him. And you think the common, everyday defendant understands that language. How about just saying this, you understand that this witness could really hurt your case or really help your case depending upon who's representing you? Yes, Your Honor, that would be of all appropriate admonitions. You're giving up the opportunity to cross-examine her and point the finger at her, essentially, correct? Yes, and attack her credibility and so on. Yes, Your Honor. There are no more questions. I don't believe there are. Thank you, Mr. Connolly. Thank you, Your Honor. All right. I'd like to thank both counsel for the quality of their arguments here this morning. It was a very interesting matter. The matter will, of course, of necessity, be taken under advisement, a written decisional issue in due course. We will stand and brief.